Rel: May 23, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

### CL-2024-0368

_____

**Jonathan Routier**

**v.**

**State of Alabama**

**Appeal from Russell Circuit Court**
**(CV-22-900158)**

PER CURIAM.

Jonathan Routier appeals from a judgment of the Russell Circuit Court ("the trial court") ordering the forfeiture of $47,013. For the reasons discussed herein, we conclude that the trial court did not have jurisdiction over the money; therefore, its judgment is void, and we dismiss the appeal with instructions.

<u>Background</u>

On September 19, 2022, the State of Alabama ("the state") commenced in the trial court a forfeiture action against Routier seeking the money that law-enforcement officials seized during an investigation into whether H&R Autos ("H&R") was being used as a "front" to move stolen vehicles. Routier co-owned H&R, a business located in Phenix City that sold used vehicles. The state commenced the action pursuant to the Alabama Comprehensive Criminal Proceeds Forfeiture Act, § 15-5-60 et seq., Ala. Code 1975, which allows the forfeiture of any proceeds derived from the commission of a felony offense. § 15-5-61(a), Ala. Code 1975. A person who knowingly owns, operates, or conducts a motor vehicle theft facility is guilty of a class C felony. § 32-8-88(b), Ala. Code 1975.

At the outset of the trial, Routier contended that the forfeiture action was due to be dismissed for lack of subject-matter jurisdiction because, he said, law-enforcement officials seized the money in Georgia. Therefore, he said, Georgia and not Alabama had jurisdiction over any forfeiture proceedings regarding the money. After hearing the parties' arguments, the trial court denied Routier's motion.

During the trial, the trial court heard testimony from two law-enforcement officials involved in the investigation. The evidence relevant to this appeal indicated that the Alabama Law Enforcement Agency ("ALEA") was part of the investigation concerning whether H&R was connected to the sale of stolen vehicles in east Alabama and west Georgia. ALEA Special Agent Senior Donald Carter testified that his lieutenant, Darrell Seymour, had directed him to conduct surveillance at H&R to determine whether there were certain vehicles on the lot that ALEA had identified as possibly using fraudulent vehicle-identification numbers ("VINs"). Carter testified that he drove by H&R's lot but that he did not see any of the vehicles that ALEA had suspected of having fraudulent VINs. He then drove by Routier's residence in Columbus, Georgia, and saw two of the vehicles with questionable VINs; he could see the dealer plate on one of the vehicles. Carter testified that he reported his results to his lieutenant, who asked him to travel to Buena Vista, Georgia, to see whether two other allegedly stolen vehicles were there. Carter said that when he located those vehicles in Buena Vista, he reported back to his lieutenant, and "[ALEA was] able to do more intel work into other

events." One of those vehicles did not have a car tag, Carter said, but the other vehicle had a dealer tag that was issued to H&R.

Based on his surveillance and other research, Carter said, ALEA contacted law-enforcement officials in Columbus, and they planned a joint operation involving the suspected car-theft ring. Search warrants were issued for five locations in east Alabama and west Georgia, including H&R and Routier's house. Law-enforcement officials from various agencies executed the warrants at the same time on August 10, 2022, Carter said. He testified that he went to H&R but did not find anything illegal or out of the ordinary. He said he then went to Routier's house in Columbus, where, pursuant to one of the warrants, Columbus law-enforcement officers recovered three of the four vehicles that were the subjects of their investigation and seized the money at issue in this matter.

Carter said that he did not take possession of the money at that time. He said that Georgia officials took the money but that he was later contacted by the lead investigator in Georgia, who told him that the Georgia district attorney involved in the matter had determined that the money did not "fall squarely within [Georgia's] statute, and that

4

[Alabama had] better jurisdiction." At that point, Carter said, he gave paperwork to the Russell County District Attorney's office for the forfeiture of the money to be carried out. Carter testified that he did not have any further involvement in the investigation. The record does not contain any evidence indicating that the State of Georgia initiated forfeiture proceedings or had any other involvement with the money once it was turned over to Alabama law-enforcement officials.

ALEA Special Agent Senior James Conner testified that he specialized in identifying vehicles with fraudulent VINs or with "cloned" VINs. His testimony involved how stolen vehicles are identified. He said that the Columbus, Georgia, police department seized about $47,000 as part of the investigation into H&R. He acknowledged that, potentially, some or all of that money could have come from legitimate sales of used vehicles.

On April 16, 2024, the trial court entered a judgment condemning the $47,013 in currency that law-enforcement officials had seized from Routier's house, and it divided that amount among the law-enforcement agencies from both Alabama and Georgia that were involved in the investigation. It also directed that a certain portion of the money be used

5

to pay court costs and the costs of maintaining the forfeiture action. The judgment did not contain any findings of fact. Routier did not file a motion to alter, amend, or vacate the judgment. On May 20, 2024, he filed a notice of appeal.

Analysis

Routier contends that the trial court's judgment ordering the forfeiture of the money seized from his house in Columbus is void because, he says, no "qualifying offense" occurred in Alabama and Alabama did not have the authority to seize property in another state. In support of his contention, Routier refers to the general proposition that, for an Alabama court to acquire jurisdiction, the res must be "'validly seized and brought within the control of the court.'" Garrett v. State, 739 So. 2d 49, 52 (Ala. Civ. App. 1999) (emphasis omitted) (quoting City of Gadsden v. Jordan, 760 So. 2d 873 (Ala. Civ. App. 1998), reversed on other grounds, 760 So. 2d 877 (Ala. 1999)). He argues that because the "seizing agency" in this matter was a Georgia law-enforcement agency, jurisdiction over the seizure was in Muscogee County, Georgia.[1]

_____

[1]We take judicial notice that Columbus, where Routier lived, is in Muscogee County, Georgia.

We find the latter contention dispositive; therefore, we pretermit consideration of Routier's argument that no "qualifying office" occurred in Alabama and discuss only his argument that the trial court lacked jurisdiction over the money, which was property seized in another state. Section 20-2-93(9), Ala. Code 1975 (which is applicable to the forfeiture action pursuant to § 15-5-63, Ala. Code 1975, a part of the Alabama Comprehensive Criminal Proceeds Forfeiture Act), defines a "seizing agency" as "[a] state, county, or municipal law enforcement agency or department that seizes property in accordance with this section." The state acknowledges that § 20-2-93 does not specifically address the circumstances of this case but argues that there is nothing in Alabama's statutes regarding forfeiture that forbids the transfer of seized money between law-enforcement agencies. The state contends that jurisdiction over the forfeiture action for the money found in Routier's house that was subsequently transferred to Alabama law-enforcement officials fell within the trial court's statutory jurisdiction.

In its appellate brief, the state observes that this is a "unique" situation that Alabama courts have not addressed. In his appellate brief, Routier says that he also found no Alabama law on point, and our own

7

research revealed no such authority. In support of his contention that an Alabama court did not have jurisdiction to consider the forfeiture action for the money seized in Georgia, Routier relies on a case from the Georgia Court of Appeals, Morrow v. State of Georgia, 186 Ga. App. 615, 367 S.E.2d 854 (1988). In that case, on two occasions, Morrow had driven a 1982 Honda automobile ("the Honda"), which was registered in his name, from his house in Tennessee to Fannin County, Georgia, where he sold cocaine to an undercover agent of the Georgia Bureau of Investigation ("the GBI"). 186 Ga. App. at 615, 367 S.E.2d at 855. When Morrow traveled to Georgia to sell cocaine to the undercover agent a third time, he was arrested. On that occasion, he drove a borrowed vehicle. Id.

About a week after Morrow's arrest, Tennessee law-enforcement officials executed a search warrant based on information that the GBI had provided and seized the Honda from Morrow's residence. An investigator from Fannin County, Georgia, "acting at the direction of the Fannin County District Attorney but without benefit of judicial process," traveled to Tennessee, took possession of the Honda, and delivered it into the custody of the Fannin County sheriff. 186 Ga. App. at 615, 367 S.E.2d at 855-56. The State of Georgia then filed a petition for condemnation

and forfeiture of the Honda, alleging that it had been used to facilitate the transportation of cocaine, in violation of Georgia law. 186 Ga. App. at 615, 367 S.E.2d at 856. The Georgia trial court entered a summary judgment condemning Morrow's interest in the Honda. 186 Ga. App. at 615, 367 S.E.2d at 855.

In reversing the forfeiture judgment, the Georgia appellate court observed that the Fannin County investigator who took the Honda from Tennessee did not do so pursuant to judicial process, but, instead, "he simply took the vehicle from the custody of the Tennessee authorities" who had seized the vehicle pursuant to a search warrant. 186 Ga. App. at 616, 367 S.E.2d at 856. "Clearly, no process was ever issued by any court purporting to authorize either the Fannin County District Attorney or the Fannin County Sheriff to assume possession" of the Honda. Id.

In his brief, Routier argues that, just as Tennessee authorities held the Honda for the Georgia law-enforcement agent who took it back to Georgia without the benefit of judicial process, in this case, he says, Georgia authorities held the seized money for Carter, "who then took the property to Alabama without the benefit of judicial process, and persuaded the District Attorney in Alabama to file a forfeiture action."

9

Routier says the only difference between <u>Morrow</u> and the present case is that <u>Morrow</u> involved a car rather than money.

Five judges of the Georgia appellate court agreed with the rationale set forth in <u>Morrow</u>; three did not. 186 Ga. App. at 616, 367 S.E.2d at 856. The state urges this court to adopt the rationale of the dissenting opinion in <u>Morrow</u>, in which it was argued that the Tennessee authorities had lawful possession of the vehicle at issue and were empowered to deliver it into the custody of the Georgia authorities. <u>See</u> 186 Ga. App. at 617, 367 S.E.2d at 856-57. Noting that there was no authority forbidding the transaction between the Tennessee and Georgia authorities, the dissenting opinion concluded that Morrow had failed to demonstrate the illegality of the Georgia court's action in ordering the forfeiture of the vehicle. <u>Id.</u>

In a forfeiture action, a trial court exercises in rem jurisdiction, which refers to the "court's power to adjudicate the rights to a given piece of property, including the power to seize and hold it." <u>Black's Law Dictionary</u> 982 (10th ed. 2014).

> "A court obtains <u>in rem</u> jurisdiction when it validly seizes property so that it is brought within the control of the court. <u>Republic Nat'l Bank of Miami v. United States</u>, 506 U.S. 80, 85, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992). Judicial control of

10

> the <u>res</u> may be either actual or constructive. <u>Id.</u> at 87. '[T]hat court which first acquires [<u>in rem</u>] jurisdiction draws to itself the exclusive authority to control and dispose of the res.' <u>Ex parte Consolidated Graphite Corp.</u>, 221 Ala. 394, 397-98, 129 So. 262, 265 (1930)."

<u>Little v. Gaston</u>, 232 So. 3d 231, 234 (Ala. Civ. App. 2017).

Here, the money was seized pursuant to a search warrant issued by a Georgia court, which then obtained in rem jurisdiction over the money. Although the Muscogee County district attorney turned the money over to Alabama law-enforcement officials, the Georgia court's control over the money had attached, and it retained constructive control over the money. See <u>Republic Nat'l Bank of Miami v. United States</u>, 506 U.S. 80, 85 (1992).

We cannot distinguish the operative circumstances in <u>Morrow</u> from those in this case and are persuaded by its rationale that a court with jurisdiction over the seizure itself, and, hence, the seized property, must approve the transfer of the seized property to another state for that state to assume in rem jurisdiction. Here, Georgia law-enforcement officials seized the money from Routier's house in Georgia pursuant to a search warrant issued by a Georgia court. The money was later transferred from Georgia law-enforcement officials to Alabama law-enforcement officials,

11

but there is no evidence indicating that a Georgia court had issued any process authorizing that transfer or allowing Alabama law-enforcement officials to assume possession of the money. We agree with Routier that the trial court lacked in rem jurisdiction over the money.

Because the trial court lacked in rem jurisdiction, its judgment ordering the forfeiture of the money is void. Noll v. Noll, 47 So. 3d 275, 279 (Ala. Civ. App. 2010) ("A judgment entered without jurisdiction is void."). "A void judgment will not support an appeal, and 'an appellate court must dismiss an attempted appeal from such a void judgment.'" Colburn v. Colburn, 14 So. 3d 176, 179 (Ala. Civ. App. 2009) (quoting Vann v. Cook, 989 So. 2d 556, 559 (Ala. Civ. App. 2008)). Therefore, we dismiss Routier's appeal albeit with instructions that the trial court vacate its judgment and dismiss the forfeiture action.

APPEAL DISMISSED WITH INSTRUCTIONS.

Moore, P.J., and Edwards and Hanson, JJ., concur.